The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable Craig H.D. Armon presiding. Good afternoon, counsel. We'll call case number 4-22-1072 Leudtke v. Board of Trustees City of Bloomington Police Pension Fund. Good counsel for the appellant, please state your name for the record. Good afternoon, justices. My name is Nomura Pencilla, N-E-M-U-R-A, last name P-E-N-C-Y-L-A. Thank you, counsel. And counsel for the appellate, could you please state your name for the record? Sure. Craig Mielke, M-I-E-L-K-E. Thank you, counsel. Mr. Pencilla, you may begin. Thank you. May it please the court. Both parties before you today acknowledging that the core issue before this appeal is whether or not the plaintiff, Officer Leudtke, proved that he was in fact injured in the line of duty. This is a factual determination that the board addressed back when it was conducting these decisions. Both parties agree that a manifest weight standard applies. Now, what does the manifest weight standard mean? How is this court supposed to review the board's decision? The courts have looked at this and said when the opposite conclusion is clearly evident, or the decision by the board is unsupported by the evidence, or it is obviously erroneous. I would point out, however, that manifest weight, the burden that the appellee, or not the burden that the appellee has, but that the manifest weight is not met by just having another explanation out there, or a conclusion. If the court, for example, would find that another conclusion could be made from the evidence, that doesn't mean that the overcome, whether that finding or that support. The existence of another conclusion is not determinative of whether the board erred in its decision. What this court needs to do is take a look at what the board decided and what the evidence was, the totality of the evidence, to see if the board actually made, in fact, an error. I would compare this to, for example, when appellate courts review perhaps a jury verdict or a decision by a judge. Is this supported by any reasonable interpretation of the facts? We believe, and we've shown in these briefs, and the evidence has clearly shown, that the opinion of the board, that the decision of the board was based on facts. The appellant, on the other hand, comes in and asks that the possibility that he was injured is sufficient. I raise that phrase very specifically because there are two instances in the evidence and in the arguments, in the briefs, where possible or possibly is used by either the officer or in his brief. Why is that significant? Because it comes to the idea of an analysis of what exactly needs to be proven. Of course, the burden remains on the plaintiff, on the applicant. It's his burden to show beyond a preponderance, or by a preponderance, that he is entitled to the benefits that he's asking for. There are five elements that he needs to prove. One, that he or she was a police officer, that an accident, injury, or sickness was incurred, that's the second prong. Third, from a performance of an act of duty. Fifth, that resulted in a disability, or excuse me, fourth, resulting in disability. Fifth, rendering the suspension from duty necessary. We concede that plaintiff, in his presentation of the evidence, at the time of the hearing, met factors or elements one, four, and five, in a sense. However, what he didn't do sufficiently, and the board focused on this in its decision and opinion, he didn't tie the fact that the claimed injury, one, in fact happened, and two, was actually related to the disability. Why is that important? It's important because if the plaintiff has not shown, or if the applicant, the police officer has not shown that he was in fact injured, regardless of what he claims, if he hasn't proven it, then he can't ask for the benefit, or can't be awarded that benefit. So, for example, is it, let me rephrase that, the test really, or the question that this court needs to address, is whether Officer Lutke was injured, and whether that injury led to his disability. How do we, what do we look at for evidence in this case? Well, excuse me, counsel. Yes, if I may interrupt. So, the pension board made the finding that there was no evidence that Lutke, Mr. Lutke, Officer Lutke was injured during the incident. How do you reconcile that with the responses that were given by the three physicians in the written interrogatories? Very clearly, those opinions rendered by the, by those physicians were solely based on the statements made by Officer Lutke to them about being injured. They did not have the videotape that, that the board had, and that Mr. Lutke, or Officer Lutke, and counsel reviewed on the April 8th hearing. What happened is that the physicians, if you look at what they reviewed, specifically reviewed the medical records and interviewed the defendant. I apologize. I'm sorry. It was my former prosecutorial mindset. Sorry. Officer Lutke, his statements to the physicians were all they had to go off of on whether he was in fact injured or when the injury occurred. If I thought you just, I thought you just said that they had the medical records too. They do, but all of the medical records rely on statements by the officer as to the occurrence of the event. So in effect, it's, it's, and I, and I don't mean to disparage what the only explanation I can, or the only phrase that comes to mind is sort of garbage in, garbage out. And I don't mean it, I don't mean it in an offensive way. This, this computer, so to speak, spits out the inputs that it gets. All of its inputs were coming from at the time of these and the medical records were coming from officer Lutke. None of those physicians, none of the expert testimony was able to look at the video like the board was. The board had not only the video, but also officer Lutke's various statements made during the course of his treatment, made during the course of the event also. However, the physicians specifically indicated, did they not, that they found the officer's explanation consistent with their findings, found Dr. Huddleston said officer Lutke's explanation of how his disability occurred is consistent with his findings. Consistency does not equal causation or even correlation. All it indicates is that his version of events is, is borne out by the physical examinations that occur afterwards. It doesn't mean that his version of events is in fact true, I think is the position of the board. In other words, when you take a look at the video, the video in effect contradicts a lot of what Lutke says occurred or how it occurred during that event and during that occurrence. It seems as though you've spent a great deal of time focusing on differences or inconsistencies in the officer's testimony about when he noted a complaint with respect to his knee. That seems to assume that, and we don't have any evidence of this, that this is an injury that would be detectable by the person at the instant it happened such that he would be expected to correlate that to this particular part of the struggle, this particular act. And I'm not sure that's got a good foundation in that argument. Two points on that, Justice. One, again, it's not the pension board's burden. It's his burden to show that. Number two is he specifically says that... You're not going to say it's his burden to show that he knew as a lay person when this injury happened. I apologize. If that's the impression I gave, then I misspoke. It's his burden to prove that he was injured. I think that's what I'm trying to say. Right. But he doesn't have to do a freeze frame on the video and say, there, that's where I was injured. That's not reasonable to anticipate that he's going to know that. Except for what he says during his testimony and during his examinations by the physicians. He says it's an immediate searing pain that he felt when he stepped off the ledge at one point or when he was involved in the tussle. But he's saying that... Follow up on what Justice Doar has just asked. What you're saying is that lay people watching a video, however, are able to determine whether he's injured or not injured. What I'm... To follow up on that... Okay. I think it'd be a yes or no answer. And then you can go ahead and explain what the answer is or why. I know this isn't going to... A qualified yes? But it's... I think what's evident in the evidence before this court is that the applicant, Officer Lutke, specifically states places where he says he was injured. That's fine. That's injured. But you're equating the incident of injury with some physical manifestation observable on a video. My knee may hurt me, but I may not limp until I do something else or at some further part of the process. And it seems to me that your argument is based almost entirely on, well, you know what? The board watched the videos. We don't care what the doctor said. We don't care what anybody else said that was present. We think that he wasn't really injured at all in this incident because of what we see on the video. Isn't that pretty much what it boils down to? I think that that is a substantial part of the board's decision-making process, is that we can see that he is disabled now. We can see that he was a police officer. If he was, in fact, I think we would concede that even if... Assuming the events as laid out, if he was, in fact, injured during that time frame, that would have been an act of duty. Those are not questions. I think what the board is looking at is what evidence do they have about an injury actually happening? Because this is not a standard... Other than the three doctors. I'm sorry. Other than the three doctors, right? Correct. Okay. But what's very important in this case also is this devastating injury that the officer suffered when he was 15 years old, when he blew out his knee on the motorbike. And that's what, if you look at the doctor's opinions, they're saying that he's got this arthritic response in the knee. That's what they're attempting to deal with. Counsel, excuse me. Where in the record, though, is there a physician that indicates that Officer Ludke's disability was solely caused by his pre-existing condition? Because that question was set forth in those interrogatories, was it not? It was. And did any of those physicians indicate it was the sole cause of his disability, was the pre-existing condition? This is another yes or no answer. And no, none of the physicians specifically answered it that it was the sole cause. Would you disagree with this statement? Disability pension may be based upon the line of duty aggravation of a pre-existing physical condition. Absolutely. And we would concede if there was an actual injury that was proven other than the statements by Officer Ludke, then that would follow, of course. So the comments about his injury at the age of 15 really aren't relevant? They are relevant because if you look at the medical examination of him and the surgery and the replacement, all of that spins around pre-existing injuries. That's a little circular. Do you concede that he, I'm taking you don't concede that he had an aggravation to his injury. You don't concede that? Correct. I don't think the board has conceded that because the board is saying that there wasn't sufficient proof to show that he was actually, an injury occurred at that time to be an aggravation. Isn't that something that Mr. Ludke is in the least capable position of saying, and the physicians are in the greatest capable position of saying? He can't say whether he's injured. He might say, yeah, my knee hurt. I don't think you'd accept that as proof of an injury. I think no, because I guess to look at the evidence as shown in the videotape, the videotape is the best evidence because it just shows exactly what happened. It doesn't show what happened inside his knee. No, but it shows that he's not stumbling. He's not doing what he said he was doing, that he doesn't shout out in pain, doesn't complain to anyone about his knee until much later when he gets to the hospital. The video is pretty clear that what you would expect a follow-on on being injured, on getting hurt, not the condition of the hurt or how bad the hurt is you would expect an individual to exclaim in pain or to exhibit some- Why would we expect that? We've got law degrees, not medical degrees. Why are you saying that we should factually assume that would be true? I think we, as lay people, regardless of law degree, as lay people, as the board itself has the ability to use its common sense and say, what does this video show to us? Does it show someone who's injured or does it show someone who is not injured? In the video itself of the officer, and I appreciate it's not related necessarily to the knee, but he does complain and even calls his supervisor about his back, correct? Absolutely. And so again, the inclusion of something, but the exclusion of something else, why is he not complaining about his knee? That's a significant issue that the board focused on. What's he complaining of at the hospital? A few hours later. Well, this is interesting. This gets back to the possibility issue. This goes directly to what you said. Why is he complaining about his back, but not his knee? What is he complaining about at the hospital? He complains about a bad back, that his back got twisted and he possibly injured his knee. Possibly. He doesn't say his knee is injured. He said he possibly injured his knee. If he had said that I definitely injured my knee, I don't suspect he would say, well, then we better fold our tent. He said it's injured. That carries the day. Wouldn't you be telling us, he can't say that. That's not something within his knowledge. Let's see what the doctors say. It is within his knowledge because his knowledge is, are you hurt? Did you possibly injure something? It was his choice to use that phrase, to use possibly. Not that my knee got twisted up or I hurt my knee. My knee is in pain. This would seem to me to be one of the only situations where a police pension board evaluating a possible line of duty injury chooses to rely on the defendants or the applicants statements versus medical evidence. In other words, if he didn't say anything, or if we as lay people looking at the video concludes somebody should be acting or reacting differently, we don't care what the medical says. With all due respect, I don't think that's where we're going with this. I think what we're saying is. You said the whole thing is based on the video and that his actions and statements weren't what the board thought was appropriate. Therefore, he was clearly not injured. Going back to it, fundamentally, it's his burden to prove that he was injured. That's probably why they submitted three doctors. By statute, we have to submit three doctors. Those are the doctors. What would you expect if he didn't submit three doctors? That would be another serious legal issue. It's three doctors. By statute, for the independent medical examination. Why do you think they picked three? For instance, Chicago only requires one. It's a statutory decision made by the legislature that I can't get into why it's three. Maybe because that way you don't have to rely on just one doctor. Maybe you don't even have to rely on two. We're going to make him submit three. The case law indicates that you don't have to have unanimity for the doctors, nor do you have to go with the majority of doctors. In this instance, however, he does, but you're disregarding that. I'm sorry. I didn't catch that. I'm sorry, Justice. In this instance, he does have essential unanimity, but you're disregarding that. Yes. Fundamentally, because the unanimity is based on solely his statements and not the medical record, physical evidence, and the medical records. Well, the medical, well, yes, of course, the medical records, but the medical observations by the doctors and nurses at the hospital. There's no way that a doctor can say without getting the history from the patient to opine at all about what happened before. Again, if the patient's history is not supported by other objective evidence, that calls into question whether or not he or she has proven their case, at least by a preponderance. All right. Thank you, Mr. Pencilla. Your time is up, but you will be given an opportunity in rebuttal. Mr. Milken. Thank you. Thank you, your honors. May it please the court counsel. The basic undisputed facts of this case are that this officer was working full unrestricted duty for over 10 years before the accident. He was working full unrestricted duty on the day of the accident. He was in a very substantial struggle with a perpetrator who's a former college wrestler who was resisting arrest to the point that his fellow officer pulled out a taser and hazed this gentleman to get him under control. Within, he immediately has complaints of pain and discomfort. Later that day, he goes to the emergency room. I'm going to talk about that in a second. He is continuously treated from the day the accident through the pension hearing for these knee injuries, undergoes surgery, and in fact, never returned to work. That alone is very heavy evidence as to what caused what. This is not dissimilar from a football player who plays an entire football game and then after the game has a bad knee that requires surgery. That football player probably can't identify what play caused that knee injury, but it happened sometime during that football game. Yes, this is a manifest way to the evidence standard, but this court has reversed this pension board in the past, and I'm referring to the Ashcroft case that both parties cite their briefs here. The trial judge got it absolutely correct. The pension board stated there was no evidence of causal connection, and in fact, all the evidence reveals causal connection. Mr. Mielke, can I ask you a question? Sure. I take it your position is that there was an aggravation of the knee injury from this event. Yes, I believe all of the doctors indicate that. I shouldn't say, I think one of the doctors doesn't rely on aggravation, but certainly two of them do. Yes. Do you then need evidence that for the aggravation, he wouldn't have needed the surgery? No, and that's a separate question, but there's an appellate case on that where my partner and I did a jury trial years ago where the guy had, I think it's called a tripartite patella, and had been told he's going to need surgery someday. He actually falls down, and we sue the shopping mall for the falling down, and he has surgery a month or two later. The requirement is that the surgery in question, disability in question, that the accident or here the line of duty incident was a cause, and the fact that this gentleman may have had a knee that was going to deteriorate over the next 25 years is not the question. Do the physicians say that this incident was a cause of the need for the surgery? Yes. I mean, the question, and let's go through the process here. The pension board controls the process. They obtain all the medical records. They retain the three doctors, and then they submit the records, and they submit specific interrogatories, and the interrogatory that's questioned is whether the alleged disability is a direct result of the August 24 incident, and if so, which specific related activities, or whether the disability resulted from an aggravation of the preexisting condition, or whether the August 18 incident contributed to the disability, or whether the disability was solely caused by the preexisting condition. All of the doctors answered affirmatively for Officer Lutke that this was either a new injury, and I forget which doctor said that, or that it was an aggravation of the preexisting conditions, and they all opine that the eventual surgery was related. We also have in the file the independent medical exam that was done in the underlying workers' compensation case by Dr. Albert, where he also specifically said surgery was appropriate, and it was related. If I could talk about these emergency room records, counsel cherry picks from one page where it does say possibly injured left knee. That's in the file. He ignores, again, this is all one long ER visit, multiple people making entries in the records. At the record page 115, the history is, quote, patient reports pain in back and knee pain that occurred at work this evening. There's a third history in the records, and that's at page 116, where it's reported, quote, 45-year-old male presents to the ED with complaints of back pain and knee pain. Patient reports hurting his back while on duty, twisting his back and hurting his knee. The emergency room records also reveal that there were multiple x-rays done of the left knee and that the x-rays were positive for what's called joint effusion, which is swelling in the knee. There was also a clinical exam done, again, in the emergency room, and the clinical exam, this is at page 114 of the record, showed pain in the lateral joint line with varus, V-A-R-U-S, varus stress, pain in the medial and posterior joint space, and tenderness found, medial joint line tenderness noted. Somewhere in their reply brief, they indicate that there's no indication of an injury to the knee in the emergency room records, and that is simply not true. You know, the fact of the matter is that all of the examining physicians found the injury was related. The pension board, as they have done on many occasions, had the ability to send these videos to the pension board doctors and issue a supplemental report or have it included in the initial report. They chose not to do this, but to get to opposing counsel's main point, he claims that these videos contradict my client's testimony. I submit that is simply not true, and in fact, we spend four pages of our brief, that's pages 9 through 12, and provide no less than 31 pages of screenshots that shows point blank this pension board and their decision repeatedly said things. My favorite is that the perpetrator never lunged at somebody. We've got video evidence of the perpetrator lunging and my client restraining him from lunging, and yet this pension board somehow reviews these videos and says the perpetrator never lunged at anyone. So, you know, I often say that although we have the manifest weight of evidence standard that applies to juries, no lawyer in their right mind would let a pension board sit as a jury. We've got three police officers that are elected by the other patrol officers, and we have two citizens that are appointed by a mayor. If these people purported to sit on a jury, both myself and opposing counsel would be requesting to strike these people from the jury for cause. But they are sitting in this case, and to the extent that they have made factual findings, they are entitled to a degree of deference, are they not? Absolutely, and that's one of the things that we point out. They make factual findings. I think there's 84, 86 paragraphs of factual findings. They never find first that this pre-existing condition was the sole cause of the disability. That is not a finding on the board, and yet that is now their argument on appeal. They also never make findings that relate to the video evidence. As I point out, rather that appears in their discussion section. So I don't believe that this board has made findings that my client's testimony is not supported by the video, and to the extent they made statements in their discussion that indicate the video doesn't support my client's testimony, I think this board is point blank, black and white wrong. The videos are in the appellate file. I think they're in there on some type of a hard drive and a CD possibly. But again, we point out in great detail numerous times for this board's statements in their discussion about this video are not supported by the video. Opposing counsel does not address the videos whatsoever in their initial brief, and they don't address my specific instances where the board's statements are not supported by the video in his reply brief. So we're left to wonder, other than counsel's argument today, exactly how and where this video didn't support my client's testimony, or how and where it doesn't support what these doctors found. The doctors took detailed histories, and in reality, all the doctors had to hear was that this gentleman was involved in a struggle with a perpetrator resisting arrest, and he comes out of that with a knee injury. How and when that happened I don't think is all that important to these doctors, and if they had reviewed the video, which the pension board could have had them done, no way in the world would it have changed. But the reality is we have no less than three examining doctors opining that the incident is a cause, if not the direct cause, of this gentleman's disability, and two of them, I believe, opining that it's an aggravation of the pre-existing, one not saying that, but just saying it's a direct cause of it. So this board's decision isn't just contrary to the manifest way to the evidence. It's one of the few cases where I can say it's contrary to all of the evidence, and lay people should not be playing doctors. If they're going to rely on some video, they ought to at least be honest about what's depicted on that video, and not make statements like the perpetrator was never lunging at anybody, where we have a video of this former college wrestler lunging at the other officer, and his face, you know, they almost butt heads, and my officer restrains him for doing so. We also have the video that shows the perpetrator resisting arrest. He goes down into what is a wrestler's hold, and that's the way it's described by both officers, and my guy's on his back trying to jam his left knee into the perpetrator's hind side in order to get him under control. We also know... Excuse me, counsel, and Justice already touched on this, but, you know, the deference that's to be given to the findings and the conclusions that are made, it's more than just a disagreement on what the video shows as to whether this constitutes a lunge or not, or if someone would describe that differently. I guess specifically, what do you feel in the record is the best evidence that makes the opposite conclusion readily apparent that there was in this particular case? It's beyond just facts could be viewed by this panel to support a different outcome. It has to rise to the level of manifest. The three unrebutted reports of the examining physicians chosen by this board, and the unrebutted report of Dr. Alpert, who performed an independent medical exam in the underlying workers' compensation case. Those reports... Doesn't the factual premise for the physician's review have to exist and not be beyond question? If the officer said, I was hurt in a struggle, but there's no record of a struggle, the facts could undercut what the experts say, right? Certainly, there could be that situation, but it's undisputed that Officer Lutke was involved in a very heavy incident involving a much younger, very large perpetrator, who I'll say it one more time, was a college wrestler. I think he had on his shoulders, I recall, a tattoo that was the ISU wrestling team. The evidence is a taser was used to restrain this gentleman. Again, the pension board in their decision says the evidence shows that this gentleman cooperated. He didn't cooperate. He was tased. He was taken to the ground. He was wrestled with. Even after he was handcuffed and they were walking down the stairs, he still didn't give up. He lunged, as I recall, Officer Lutke is escorting him down the stairs. He turns around and lunges an officer from it. This was not a polite arrest. The perpetrator was resisting and really never gave up. I think we also see in the video that while there is no step down immediately outside of this apartment complex, there is a step down at a curve a couple of feet later. When I view the video, I see Officer Lutke walking with a stiff leg after he walks down that curve. Again, I've given screenshots of that to the court. Certainly, the court may view the video if they wish. At the end of the day, for whatever reason, this pension board chose to ignore not just the manifest weight of the evidence, but really all of the evidence. And they wrote a decision that on multiple occasions states things that are not true, like the fact that they assert there's no evidence to support the causal connection. That's just wrong. They described this video and again, it's just wrong the way they describe it. The trial judge got it correct and we would request that this panel affirm the decision of the trial court reversing the decision of the pension board and award Officer Lutke his life duty disability pension. Thank you. Thank you, counsel. Mr. Pencilla, you're on mute. Sorry, my apologies. Thank you, Justice. Some fundamental issues that this court must continue to keep in mind. Counsel keeps saying that we have control of the process, the board. The board has a lot of responsibilities, absolutely. But it's not the board's burden to either prove or disprove a case. It is the applicant's burden. And if the evidence is sufficient, it doesn't, he is not entitled to the benefit of the doubts in a case in any application. He must meet his burden, regardless of how low it is. Counsel keeps making a point of saying, well, there's the board saying that he wasn't lunging at anyone. That's not what the board said. And that's not what the briefs indicate. Officer Lutke made a claim that he was injured at one point with the physicians when he was describing to one of the physicians that he was injured when the offender lunged at him. The board reviewed the evidence and found that there was no actual lunging at Officer Lutke, but said that he was lunging, that the offender was lunging at other people involved in the case. What significance is that to the question of whether he was injured during that event? Does it matter if he got that wrong? Because what it does is it goes, it's the totality of the circumstances as to whether or not he was in fact injured. Because if he's making, and this is one way that you could look at it, if he's making a statement saying that I was injured in this manner, because I was doing this and the evidence doesn't support that, that becomes an issue for credibility as to whether or not he was actually injured. Part of this is, is that we don't, you know, if we didn't have that body camera, we wouldn't know exactly what happened there except for the testimony, sworn testimony of the officers and the individuals there. But we do have that independent camera. And do plaintiffs have the right to forward that to the reviewing physicians? Absolutely. Given that it's his burden, I would have hoped he would have. And I want to point out that when that exhibit was entered later in a second hearing on April 8th, and specifically counsel, and I apologize my glasses, counsel stated to the board, and this is on page 1654 of the record, Officer Ludke reviewed the video himself and he has no further testimony. So he's not able to point out from that supplemental video exactly when and where he was injured. Okay, but then we're back to that point. Knowing that you were injured in a scuffle is a point that you don't fail to prove because you don't know where in the scuffle you were injured. I'm not sure that he didn't be competent to give that opinion. But he can tell us where, where it hurt, where did he get hurt? Where was it that he actually got the twisted leg? Where is it that he stepped off that ledge? You don't think adrenaline in a situation like that is such that it's unreasonable to say, please tell us which frame of this video is the one in which the injury happened and you felt your knee hurt? No, I do not. I believe that an individual who is injured, in retrospect, can go back and say, look, this is where that twisting happened, and he wasn't able to do that. I feel like if he did that, and it supported his case, you'd be the first one to tell us that he's not competent to give that testimony. No, because it goes to his, he has sole control over his physical pain that he experienced. We only get the information from him. So if he would have told us that, then we'd be in a because it would have been confirmed by the video. And we would say, all right, well, it looks like he was injured. All right. But the problem is he claimed injury and there were no objective circumstances that show that he was injured. Mr. Melke's argument that there was, in effect, a cage match going on here simply relies on an assumption, which this court cannot make, that every time someone resists, someone gets hurt. That is a syllogism that just cannot apply. There was resistance. It wasn't a cage match as described. If you take a look at the video, the individual is down. When he says a hold, he's down on all fours and not moving. I think I would agree with you that not every time there's an incident, someone gets hurt. But if there's an incident after which there's immediate complaints of pain, after which there's reports of that pain to the medical professionals, after which there's three physicians who say he was hurt in that incident, you've really climbed out on a ledge to say that that's not correct. And I would agree with that, except for I would pose one hypothetical to the court. If you were to talk, approach an individual on the street, reasonable person, and you were to tell them, this is what I have. I have someone claiming that they have a possible knee strain, and then we had to replace his knee. One would say, wait a minute. Why is that? Why do you need to replace the knee? And based on that, it's his burden to show why that knee needed to be replaced because of a possible sprain, because of some tenderness that occurred, possibly. We're not even sure. But you've got no physician who backs you up on that. You've got no physician who says he didn't need that because of the aggravation. But I don't think physicians' opinions are gospel, and they shouldn't be treated as such. They need to be treated as what they are, which is they gather information, and then upon their review, they then opine. They could be mistaken, or they could have the wrong information. But again, it's not the board's burden, it's the plaintiff's burden or the officer's burden to show that. The board found that he did not. Thank you. Your time is up. We appreciate your arguments. The court will take this matter under advisement. The court stands in recess.